Littleford, J.
This is a proceeding brought against Thomas F. Shay on a charge of contempt of this court in that he abandoned a client in a criminal case on the day of trial. The first count in the information is as follows:
“That the said Thomas F. Shay on the 11th day of January, 1906, was willfully guilty of misbehavior as an officer of this court in the performance of his official duties and in his official transactions, in this—
“That a certain true bill of indictment was reported and filed in this court on November 25, 1905, by the grand jury of said county charging one Frank Casey with embezzlement, and being numbered 14,032 of the records of this court; and said Thomas F. Shay had theretofore been regularly employed by and on behalf of said Frank Casey as his attorney and counsel to represent and defend him on said indictment arid was then such counsel, the said Frank Casey at all times herein stated being confined in the county jail of said county in default of bail.
“And that on January 6, 1906, by order of this court, in accordance with the practice long continued in such cases, and which said practice was known to the said Thomas F. Shay, said indictment and said cause against said Frank Casey was set for trial and hearing to be had on January 11, 1906, and notification of said setting was duly sent to said Thomas F. Shay and received by him, and other notice of said setting being also received and had by said Thomas F. Shay as attorney and counsel aforesaid.
“That upon said. 11th day of January, 1906, in accordance with said order of court said indictment and cause was regularly called for trial in open court, and the court, the jury, prosecuting attorney, and the state’s witnesses being in attendance and the said Frank Casey being brought into open court in custody of the sheriff, the said Thomas F. Shay willfully neglected and failed to attend upon said trial and then and there failed to show cause, or have cause shown, for his said absence; and without the consent of or notice to said Frank *659 Casey willfully abandoned said cause and said prisoner so that the administration of justice was obstructed and the said court embarrassed in the performance of its duties and was unable to proceed with said trial, and said court was compelled to adjourn and discharge said jury and witnesses and was unable by reason of the premises to transact the business of this court. ’ ’
The second count alleges that .after Mr. Shay failed to appear on January 11 as set forth in the first court, the court adjourned the trial to January 15, and that a notice was sent to Mr. Shay of the setting of that day, ydiich notice he received; but he again failed to appear, so that justice was obstructed and the court embarrassed in the performance of its duties.
The answer of the defendant denies that he was ever the attorney for Casey except on conditions which had not been complied with; denies that the case was set for January 11, or that Mr. Shay ever received any notice of such setting; and denies that Mr. Shay willfully failed to attend the trial or that he embarrassed the court in the performance of its duties. The answer, further alleges that on January 11th, the court assigned Mr. Salzer to be counsel for the defendant. As to the second setting of the ease, January 15, the answer alleges that Mr. Shay wrote to Mr. Morris, the assistant prosecuting attorney, that he could not attend in this court on- January 15th, because of business elsewhere; and that Mr. Shay was, in fact, on that dáv engaged in the Common Pleas Court of Union County, at Marysville, Ohio.
The failure of Mr. Shay to appear in this court to defend Casey on January 11th and 15th amounted to what is called “misbehavior in the presence of the court”—that is, the court could see that Mr. Shay was not present, and it devolved upon him to show why he was not there, the court having by an entry set the day for trial. This court had the right, therefore, to try this defendant under Section 5639 without the appointment of a committee and the putting of the charge in writing. But Mr. Shay requested that the charge be put in writing, and in order that everything might be done calmly, the court complied with his request.
*660 An affidavit, charging this court with bias and prejudice against Mr. Shay was filed before the trial began. It is held in Hunt v. State, 5 C. C.—N. S., 621, 3d syl., that a defendant in a contempt case may file such an affidavit if the act in question was done not in the .presence of the court; but there is no precedent for such an affidavit in a case like the one at bar. The fact that a trial on written charges was granted to the defendant here does not entitle him to the further privilege of taking the case from this court to be tried before another judge.
In Hale v. State, 55 O. S., 210, the Supreme Court of Ohio has held that the General Assembly is without authority to abridge the power of a court created by the Constitution to punish contempts summarily, such power being inherent and necessary to the exercise of judicial functions. The result is that even if the statute giving the right to file an affidavit of prejudice was intended by the Legislature to apply to cases of misbehavior in the presence of a court, the statute would be of no force; for the right to try a contempt committed in its presence is inherent in a court. Otherwise the judge in whose presence the misbehavior took place might have to appear as a witness to prosecute the contempt charge before a brother judge, who would, perhaps, have to pass upon the credibility of his colleague. A judge could not protect the dignity of his court in this way, but would only lessen it.-
The facts established in this case are as follows: Frank Casey had been a client of Mr. Shay’s for a long time. Five times, Mr. Shay says, he had appeared to defend Casey, and he had received $20 in all for these services. In October, 1905. Casey was arrested by a man for whom he sold goods on part payments. Mr. Shay appeared for him in the police court and had the charge dismissed; but the grand jury took the case up and found a true bill against Casey for embezzlement. Casey was put into jail. Mrs. Casey, the mother of Frank, a widow, old and poor, undertook to pay Mr. Shay to defend her son. She visited him.from time to time and paid him small sums, for which he signed receipts. On January 2d she paid him $5, which was the last payment made, and which she says she told him was the widow’s mite. This was a few days before the *661 Casey case was set for trial. Mrs. Casey paid Mr. Shay in all $30. The receipts are signed by Mr. Shay himself.
On Saturday, January 6th, a postal card from the prosecuting attorney addressed to Mr. Shay was put into the mail, notifying' him that the Casey case was set for trial Thursday, January 11th. On January 9th an entry was made on the journal setting the case for the 11th. The Court Index of January 10th and’llth noted the setting of.thp ease.
On Thursday, January 11th, the case was called for trial between 11: 00 and 11: 30. The witnesses for the state were on hand, but the defendant was without either witnesses or attorney.
The court, therefore, had a telephone message sent to Mr. Shay’s office, telling him the Casey ease was for trial. Mr. Jones, one of Shay & Cogan’s office clerks, came to the prosecutor’s office and said that Mr. Shay was out of town, which was not true. Mr. Jones on the stand was not able to explain why he made this assertion, nor why, when he returned to the office at noon and found Mr. Shay there, he failed to at once telephone to the prosecutor’s office and correct the mistake, if it was a mistake; for he knew the court was trying to locate Mr. Shay.
The court assigned Mr. Salzer to act as counsel for Case and adjourned the case to Monday, January 15. The case of State v. Ingram proceeded to trial, and after a verdict about 1: 30, the court adjourned for the day because there was no further business.
The next day,- January 12th, Mr. Shay not having appeared, the court sent for Mr. Cogan, Mr. Shay’s partner. Mr. Cogan in open court said that the Casey case was in the hands of Mr. Shay. The court told Mr. Cogan to tell Mr. Shay to come up to the court house and explain his absence the day before. Mr. Shay did not respond, and on the same afternoon, the court directed Mr. Morris, of the prosecutor’s office, to write to Mr. Shay, telling him the Casey case was set for Monday, January 15, and to ask him to be on hand. This letter Mr. Shay received, and answered by saying that he would be “delighted to comply with the judge’s request,” but that he would be actively engaged elsewhere on the 15th,
*662 The case against Casey, therefore, proceeded to trial on January 15th with Mr. Salzer as attorney for the defense. Mr. Salzer had been able to find Mr. Shay at his office for consultation only once, Saturday afternoon, January 13th. He obtained from Mr. Shay at that time the documents to be used by Casey in his defense against the charge of embezzlement, and other information; but it was not possible for Mr. Salzer to properly prepare the case by Monday morning. He did all that could be done, but the defense went in badly and Casey was convicted.
The court then issued a rule against Mr. Shay citing him to appear and show cause why he should not be held in contempt for failing to defend Casey.
On the afternoon of Tuesday, January 16th, Mr. Shay appeared in court and demanded that his case be taken up. The court was at the time engaged in thé consideration of the special charges presented by counsel in the Casey case, which was then nearly done. The court declined to go into the matter with Mr. Shay until the business in hand was disposed of. Mr. Shay thereupon tore up the rule and threw it into the cuspidor, saying the writ was of no force, and using loud and insulting language to the court, to which no reply was made; but the court directed the sheriff Jo detain Mr. Shay in the court room under Section 5641, Revised Statutes, which provides that—
‘ ‘ This section shall not be so construed as to prevent the court from issuing process to bring the accused party into court, or from holding him in custody pending such proceedings.”
The arguments in the Casey case were brief, and after the jury retired, Mr. Shay was called to the bar and told by the court that he was charged with contempt in failing to appear to defend Casey on January 11th and January 15th. Upon Mr. Shay’s demand that the charges be put in writing, the court granted the request although the court had the right to proceed summarily under Section 5639, Revised Statutes, as said above. The next day the court appointed as a committee, Judge Jacob Shroder and Mr. Thomas II. Darby, Assistant United States District Attorney, to prepare the charges.
Mr. Shay had called Mr. Lawrence Maxwell and Judge Outcalt into some litigation in the United States Court as associate *663 counsel some time before, and to these gentlemen he now turned for help.
On Friday, January 19th, Judge Outcalt and Mr. Shay asked for a conference with the committee, which was granted. The two went to Judge Shroder’s office and there met Judge Shroder and Mr. Darby.
What was this visit to the committee for? On the stand Mr. Shay said repeatedly that it was to find out what he was charged with. He denied over and over again that the court had told him what the charge was when he appeared in response to the rule. But there were several affidavits which had been filed by his counsel in the effort to have the case sent to another judge asserting that Mr. Shay had been told of the charge against him openly by the court, and these were called to his attention on cross-examination. The next day on the stand Mr. Shay took back his first claims, and admitted that he and Judge Outcalt went to see the committee to explain why he had failed to defend Casey. They knew, therefore, when they went to the committee, that they must account for Mr. Shay’s failure to appear in this court on January 11th and 15th.
This visit was made three days after the committee had been named. Mr. Shay and Judge Outcalt had had three days to decide what Mr. Shay’s defense was. When they came before the committee they said Mr. Shay had been prevented from defending Casey by absence from the city—that he had been absent from Christmas up to and including January 11, the day when th,e Casey trial was first called. On January 11th and 15th they said Mr. Shay was in Marysville, Ohio. Judge Shroder and Mr. Darby were both called to the stand by the court and both swore positively that these statements were made.
By a mere chance the committee knew that Mr. Shay was in town on January 2 and January 11. Otherwise, this matter might have ended then and there by the committee taking Mr. Shay’s word. A lawyer can tell where he was a week ago by asking his family, his friends, his clerks, his business associates, and looking at his own records and the court records; but no one else could prove where he was. To know which way to turn for witnesses to prove that he was in town on a certain *664 clay would be impossible. The committee, chanced to have Mrs. Casey’s last receipt from Shay, dated January 2; and they knew that Joe Casey, the brother of Frank, had visited Frank in jail on January 11th, and had then called upon Mr. Shay to find out why he had failed to be in court that morning.
The committee told Mr. Shay that they had evidence that he was in town on January 2d, and also a witness who would say that he met Mr. Shay January 11th. The name of this witness was demanded by Judge Outcalt, but the committee discretely refused to give it. ITe insisted, but the committee remained firm.
Then Judge Outcalt and Mr. Shay agreed to make a further investigation of Mr. Shay’s whereabouts on January 11th, and to provide the committee with what they called documentary proof where Mr. Shay was during that entire week. The proof was never furnished.
Four days after the first interview, Judge Outcalt, on January 23, asked Mr. Darby to come to his office. Judge Outcalt says he had been- looking everywhere to find out where Mr. Shay was on the 11th. ■ He told Mr. Darby that Mr. Shay was in the United States Court in Cincinnati on Tuesday and Wednesday, January 9th and 10th, but he again asserted that Mr. Shay was in Marysville on Thursday, January 11th.
At this interview Judge Outcalt held in his hand the Court Indexes of January 10th and 11th. In them are noted proceedings of the United States Court of the 9th and 10th, in which Mr. Shay was counsel. If Judge Outcalt had lpoked at the Court Index -of January 12th, he would have found in the United States District Court column but two .things which had been done in that court the day before, and in both of them Mr. Shay was of counsel. But unfortunately Judge Outcalt did not examine the Index of the 12th. Judge Outcalt might have learned from Mr. Sidney Cowen, the deputy clerk of the United States Court, that-Mr. Shay was in that court for a short time on-the morning of the 11th; but again unfortunately he failed to inquire of Mr. Cowen, although he did inquire of Mr. Georgi, of the clerk’s office, who could give him no information. All this goes to show how completely Mr. Shay had led *665 Judge Outealt to believe that on January llth Mr. Shay was in Marysville, Ohio.
There is no doubt that Judge Outealt made the statement to Mr. Darby the second time that Mr. Shay was in Marysville on the llth. When Mr. Darby was called to the stand by the court and testified that Judge Outealt told him this, Judge Outealt interrupted him to ask, “Who said that?” Mr. Darby replied, “Judge Outealt.” When Judge Outealt took the stand he at first denied that he had made such a statement, but later admitted that he might have said it, and finally said that he very likely did say it. It is proved that he did.
After this second assurance from Judge Outealt that Mr. Shay was in Marysville on January 11, Mr. Darhy went to Marysville. There he found that the day Mr. Shay was in Marysville was Friday, January 12th, and not Thursday, January llth. The hotel register settled that fact. The committee thereupon filed charges.
Thus for just one week after he was charged by this court with contempt in failing to appear to defend Casey on the llth, Mr. Shay and Judge Outealt persisted that Shay was in Marysville an the llth. The probability of one of the committee making a two days’ trip to find out was so remote, that Mr. Shay thought he would chance it.
It is important in determining the guilt or innocence of a man to know what he said when he was first accused, and whether he told the truth or a lie. That is why this Marysville story cuts an important figure in deciding this case. If Mr. Shay had had any honest reason for failing to defend Casey, he would have given it in the first place.
' The falsity of this first defense having been exposed, other defenses were set up. These will be considered.
One of them is based on a fine technicality, but is without merit. The postal card sent to Mr. Shay on January 6th stated that the Casey case was set for trial January llth. The entry-setting the case for the llth was really not made until January 9th. ' The postal should have said that the case tuill be set for the llth. But the prosecutor was under no obligation to send the card at all; it was Mr. Shay’s business to watch the docket. *666 No matter if the card was technically inaccurate, it gave notice to Mr. Shay that the Casey ease would be tried on January 31th, and that is why it is important as evidence against Mr. Shay. If he had got a telephone message, through the courtesy of the prosecutor, of the setting of the case, to detect a little flaw in the message would not be an answer to the charge that the message warned him of the coming trial of the case. It is held in Territory v. Spiess, 37 P., 1109, that an attorney who disregards the order of a court upon the ground that it was not technically correct in its terms is guilty of contempt.
This leads up to the question whether or not Mr. Shay got this postal card. He told the committee that he did not, and he says so yet. Eight other postal cards noting cases for trial were put into the mail January 6th together with the one to Mr. Shay. The letter book of the prosecutor’s office shows that they were all copied together. These eight postals to the other lawyers are all accounted for, and are in evidence, all stamped with the postmark January 6, 1: 00 p. m. In the regular course of business the.card to Mr. Shay, according to the testimony of Mr. Megrue, superintendent of mail delivery, would arrive at Mr. Shay’s office some time after one o’clock. Mr. Shay was handed his mail that afternoon, but he says this postal was not in his mail. Mr. Cogan and Mr. Jones say they did not see it. But Richmond and Renan, the other two clerks in the office, were for some reason not called. It is hard to believe that this postal out of the whole number miscarried. A letter properly directed and placed in the post office raises a presumption that it reached the person to whom it was addressed (Rosenthal v. Walker, 111 U. S., 185, 193; Henderson v. Carbonate Coal Co., 140 U. S., 37). This presumption may be overcome by the denial of the addressee, if his credibility' is good; but Mr. Shay’s word has so little weight that the presumption holds good.
It is claimed that the assignment of Mr. Salzer as attorney for Casey on Thursday, January 11th, involved the finding that Mr. Shay was not the attorney for Casey and discharged him from the case. There are two answers to that argument. In the first place Mr. Salzer was not appointed until about 11: 30 *667 on Thursday morning, and Mr. Shay was through with the Holzman matter in the United States Court at 10:45, so that he had three-quarters of an hour to get to this court after leaving the United States Court, if he had wanted to come. He had decided not to come before Mr. Salzer was appointed. In the next place, the court could not discharge Mr. Shay from his employment in the ease. If the appointment of Mr. Salzer was not justified because Casey had an attorney, then the county might refuse to pay Mr. Salzer’s bill. But the proposition that a court may dismiss a defendant’s attorney is not sound. Mr. Justice Field in Ex parte Garland, 4 Wall. (U. S.), 333, says:
“The attorney and counsellor, being by the solemn judicial act of the court clothed with his office, does not hold it as a matter of grace and favor. The right which it confers upon him to appear for suitors and argue eases is something more than a mere indulgence, revocable at the pleasuré of the court, ’ ’ etc.
The fact is the court appointed Mr. Salzer because Casey was in jail and needed some one to look after his interests until Mr. Shay could be found, and also to help find Mr. Bhay. The court not only had no power to dismiss Mr. Shay from the ease, but it had no intention to do so. The fact that on Friday the court told Mr. Morris to send a letter to Mr. Shay asking him to be on hand Monday was enough to let Mr. Shay know that the court had no intention of dismissing him from the case, and that it still looked upon him as Casey’s attorney.
One defense set up is. that Mr. Shay’s business in the United States Court on Thursday kept him from attending in this court. The evidence does not support this claim. Mr. Shay’s movements on that day as proved by his own witnesses are as follows: From 9 : 00 until 10: 45 Mr. Shay was in and about the United States District Court attending to the decree granting an injunction in the Holzman case. This was entered at 10:45, the time being noted on the entry because it was a proceeding in bankruptcy. After 10:45 Mr. Shay was not again in the United States Court. Tf he had come -to this court, he would have been in good time for the Casey case, which was not called until after 11:00. After leaving the United States Court he went to his office. Dater he saw Mr. John Doyle with *668 reference to some collateral. That afternoon Joe Casey saw Mr. Shay at his office and told him the Casey case had gone over to the 15th, and Mr. Shay said he would see Frank Casey, the defendant, the next day.
Mr. Shay says he went home early in the afternoon of the 11th, as he was worn out. Mr. Maxwell says that the petition for appeal and amended answer in the ITolzman case were prepared by himself at his office, and that he signed Mr. Shay’s name to them on the afternoon of the 11th and filed them in the United States Court because Mr. Shay could not be found on that afternoon. • Thus Mr. Shay’s own witnesses prove that he could have left the United States Court at 10: 45 and arrived at this court- before the Casey case was called for trial; or he could have appeared in this court at any time on January 11th up to 1:30 when this court adjourned, and the court could have arranged for the Casey case to go on during the afternoon by qualifying the jury, making the opening statements and perhaps beginning the state’s testimony.
The fact is that Mr. Shay’s presence in the United States District Court on the morning of January 11th was not at all necessary. He went there to attend to entering the decree granting an injunction in the Holzman case. This injunction had been allowed by Judge Thompson on Saturday, January 6th, and was in force from that time. The form and entry of the decree could have been attended to on some other day than the 11th. Mr. Shay’s business, therefore, in the United States District Court for a short time on the morning of the 11th was no excuse for his failure to be on hand fin this court that morning, and it only occurred to Mr. Shay as an excuse, together with some others, after the Marysville story was no longer possible.
It has been argued that this court can not hold Mr. Shay to account as an attorney in the Casey case because he never entered his appearance in court in that case. The defendant pleads orally in a criminal case and hence his attorney can not enter his appearance by a written pleading, as in a civil case. Neither has a defendant’s attorney occasion to personally appear in court until the day of trial. The deiendant may even *669 be arraigned and enter Ms plea without the presence of his attorney according to the statutes. There is no such thing as a lawyer having to appear in -a criminal court to tell the judge that he is attorney in a certain case, as counsel for defendant have maintained.
A proposal and acceptance will constitute the relation of attorney and client (Blyth v. Fladgate [1891], 1 Ch. Div., 337; Smith v. Black, 51 Md., 247; Perry v. Lord, 111 Mass., 504). After the attorney is once employed notices from the court should be sent to him and not to his client. Mr. Shay had agreed to defend Casey, had received a part or all of his fee, had been given the documents upon which the defense was based and had got the consent of the prosecutor to reduce Casey’s bond from $1,000 to $500. Mr. Shay was'the proper person to whom notice of the setting of the case should be sent, as it was; and so long as he remained as attorney in the case, he was bound as an officer of the court not to impede the business of the court by neglecting his duty to his client.
That brings us to the question whether or not he did obstruct the administration of justice by his conduct, for one of his many defenses is that he did not.
In a criminal case, if the attorney for the defendant is not present, no steps can be taken. In a civil case, the plaintiff may take judgment by default. In a criminal, case the court comes to a standstill. When Mr. Shay • failed to. appear on the morning of January 11th, or even to have a representative present, this court was at a loss when to order the return of the witnesses for the state. They should have been dismissed until the afternoon, when the Casey case could have been heard. Instead of that, the court was compelled to postpone the case to Monday, January 15. Business was thus obstructed on the morning of January 11, and in the afternoon of that day the court had to adjourn because Mr Shay was not on hand.
On Monday, January 15, Mr. Shay again failed to appear to defend Casey. He went to Marysville on that day, not to attend to a ease set in court, for Mr. Ayres, Shay’s associate counsel in Marysville, • says that after January 8th there was no setting, on the docket of that court. The matter in Marysville was a *670 settlement about which, all parties had already agreed. Mr. Ayres had not even requested Mr. Shay to be there. His telegram to Mr. Shay read:
“Marysville, O., Jan. 13th. Thos. F. Shay, St. Paul Bldg. Berkshire plea guilty, five hundred dollars pays. Send, cheek. D. W. Ayres, 2 P. m.”
Mr. Shay could have secured the Berkshire plea in writing, which he did, and sent it with the $500 check to Marysville; or he could have gone there some day later in the week.
His absence from this court Monday resulted, as has been already said, in a lame presentation of the defense in the Casey case, which will make it necessary to set the verdict of' guilty aside and retry the case. Thus did Mb. Shay obstruct the administration of justice on Monday.
What real reason had Mr. Shay for not appearing to defend his client? Out of his own mouth he has answered the question. He has said again and again that he was not paid all oE his fee and that he never intended to appear if his fee was not all paid.
Fidelity to clients has brought more honor to the legal profession in the eyes of the world than any other thing. Without proper pay, sometimes without thanks, lawyers have stood in defense of their clients, from time immemorial, faithful and unafraid. That a lawyer may desert his client in a criminal case in the hour of his peril, because the fee was not all paid, is inconsistent, in the opinion of this court, with the ethics of the profession.
But this case is really worse than that. Mr. Shay abandoned Casey because he did not get as much money as he thought he ought to have, and not because Mrs. Casey had failed to pay all of an agreed fee. Mr. Shay says that his agreement with Mrs. Casey was for a fee of $250—$125 to be paid before the trial and $125 after the trial. Mrs. Casey was utterly unable to pay any such fee for her son’s defense. Mr. Shay knew that. He had defended her boy five times previously and says he had been paid in all $20. Mrs. Casey is a little old widow without any means and without even any regular employment. Her son *671 Frank, upon whom she depended, was in jail and without a dollar. Mrs. Casey’s slender means had been known to Mr Shay for a long time. She was now in a worse state than ever because her son was in jail. She paid Mr. Shay $30 in small sums, and she says he asked her to bring what she could and they would not quarrel about the amount of the fee. Is it possible to believe that this woman ever agreed to pay Mr. Shay $250, or that he ever supposed she could raise $125 in cash before the trial? The conclusion is inevitable that Mr. Shay abandoned Casey because at that time he had a more profitable client, Mr. O’Dell, to pay him for his time.
When Mr. Salzer saw Mr. Shay at the latter’s office on the afternoon of Saturday, January 13th, Mr. Shay did not then disclaim being Casey’s attorney, but merely said he had other things to attend to and could not cut himself in two. Monday morning on the train to Springfield Mr. Shay, speaking of the Casey case, said to Mr. Sawyer he would not try an embezzlement case for $30. On Tuesday, January 16, Mr. Shay told Mr. Morris that he had only got $30 in this case and had not intended to defend Casey on this account. On the same day he made much the same statement to Mr. Rulison.
All the evidence goes to show that Mr. Shay expected to defend Casey only in case there was nothing more profitable to attend to when the trial came on. It happened that he had Mr. O’Dell as a client in the cases in the United States Court and in Marysville when the Casey trial was set. He got his clerk, Mr. Jones, to tell the prosecutor he was out of town and left Casey to his fate. He intended to keep the $30 paid by Mrs. Casey, and trust to luck. The chances are ninety-nine out of a hundred that a court will not go into the unpleasant task of citing a headstrong attorney like Mr. Shay to appear and explain such matters as this. Mr. Shay thought the court would most likely'assign some young lawyer to defend Casey, and let matters go at that. Mrs. Casey is very humble and very poor, so any complaint she might make would not amount to much. Mr. Shay was willing to take all the chances and keep the $30.
Unluckily, for Mr. Shay, this court was not disposed to look upon his shortcomings as'a light matter, not to shrink from in *672 vestigating his conduct because of time and trouble. This contempt case has taken a week to try; but it was a week well put in. To guard the honor of the bar and the rights of clients is the first duty of the court.
The rights of a defendant in a criminal case must be protected by the court. Among these rights is the right to a proper defense (Section 7245 and Section 7246, Revised Statutes). When an attorney, who is an officer of the court, assumes the defense of a prisoner at the bar, he must do his duty in the premises. His correct conduct as an officer of the court involves the dignity of the court itself (Bowling Green v. Todd, 52 N. Y., 493). For an attorney to undertake, to appear and then not to appear is a contempt of court (Weeks on Attorneys, Section 97). When the misbehavior of an attorney interferes with the work of the court, it amounts to a contempt of court (Jones v. Earl of Bath, 4 Modern, 367).
In conclusion the court is of the opinion that it is proved beyond a reasonable doubt that Mr. Shay was the attorney for Casey; that the postal notice sent to Mr. Shay was received by him and that he willfully neglected to attend the trial and willfully abandoned Casey, thus obstructing the administration of justice; in short, that Mr. Shay is guilty under both counts of the information.
Coming to the question of punishment, two things are generally taken into consideration—the reformation of the defendant and the good effect of his punishment on others.
As to the reformation of this defendant; his notions of right and wrong will always, remain just what they have been shown to be in this case. A heavy punishment would have no effect upon him.
As to the good effect of his punishment upon others, let it first be said that there are but few out of nearly eleven hundred. lawyers at this bar who need a caution as to their ethics. It is to be hoped that these few will be sufficiently warned by the public exposure of Mr. Shay’s conduct in this case.
Unwilling, therefore, to sentence him to jail because it will do him no good and believing that these proceedings will be a sufficient warning to any member of the bar who is inclined to *673 forget Ms duty to Ms clients, the court will let Mr. Shay go forth, punished only by the shame which his own base conduct has brought upon him in this matter. The defendant is discharged.
Jacob Shroder and Thomas U. Darby, for the state.
Lawrence Maxwell, Jr., and Miller Outcalt, contra.